And we'll turn to Edwards v. Sessions. Go ahead, Mr. Romberg. May it please the Court, John Romberg from Seton Hall Law School, Center for Social Justice, for Petitioner Norman Edwards. I apologize, unfortunately, my students can't make the argument today. Family emergencies, one sad medical family emergency, one happy post-bar secret Greece vacation non-refundable. So, you're stuck with me. I'm happy to see you and regret not seeing your students. Thank you, Your Honor. I explained to my clerks that this is why we're here. One of the reasons why you have oral argument in this case. Go ahead. Thank you. There are two reasons why Edwards can't be removed from the country. First, the government hasn't met its burden to prove that he's removable by clear and convincing evidence, the governing standard. And in the alternative, the agency's errors tainted its discretionary assessment of adjustment of status to lawful permanent resident. You're not talking about weighing equities, which we're not allowed to do. Correct, Your Honor. So, the ultimate discretionary decision is not reviewable, but errors that taint the discretionary decision. So, if the agency is not weighing the correct factors, that you have the power to recognize. You've repeatedly characterized that as an error of law that requires remand to the agency to exercise its discretion on a properly constituted set of equities. Is it an error of law if they misstate the standard or don't state it at all? Absolutely. They didn't state it here, did they? Right. So, there are two pieces. One is whether he's removable, and the most obvious and fundamental error requiring remand is that they didn't state, they didn't apply the governing standard, which requires clear and convincing evidence. The agency, both the IJ and BIA, simply, at most, said the government has met its burden. And it's clear, and the government concedes, that the standard is clear and convincing evidence, which is a very high standard. It requires a firm and abiding conviction of the high probability of the facts, and that simply was never even mentioned, let alone applied by the agency. So, at a minimum, remand is required on the fundamental question of removability because the agency did not even mention or use the governing standard. Now, we've also argued that this is one of those rare cases in which this court does not even need to remand because there's no possible way that clear and convincing evidence could be found on this record. Now, the precise question for whether he's removable for having committed a crime involving moral turpitude within five years of his admission turns on whether he was admitted pursuant to procedurally regular process in 1995. That's the only- And they claim that the burden for that falls on him. The burden for proving that, that seems to be upside down. Absolutely. The government had argued that the burden was on him to show his time, place, and manner of entry. The IJ stated that the government noted that the burden was on him. It's not clear whether the- That's a standard when the case is illegal entry, isn't it? Absolutely. Not in a case like this. Not applicable here, and the government so concedes, and you're absolutely right that that's yet further compelling proof that, as a wise panel of judges once mentioned, we just don't know. We don't know whether the agency applied the correct standard. But there's other language that suggests the IG imposed the government, the burden on the government, and why, assuming that's the case, why wouldn't it be enough that he testified he, quote, went through customs in 1995? So the first question is, is remand required because the agency applied the wrong standard? Or more to the point, is there reasonable doubt? And there's absolutely reasonable doubt about whether the agency put the burden on the government or as to time and place manner of entry on him. What there's no doubt about is it did not impose clear and convincing evidence. Maybe it imposed the burden on the government, but not by clear and convincing evidence. Now, assuming that it didn't, at the very least, you need to remand. We argue that you don't need to remand because there's no possible way clear and convincing evidence could exist on this record. And I think Your Honor is getting to the question of what does the record show about his entry, his admission in 1995? And there are two main buckets here. One is that the government has repeatedly previously concluded that he didn't, he was not admitted pursuant to an inspection in 1995. And in 1997, the government concluded that although he said I entered in July of 95 in Miami, the government said, in effect, we don't believe you. Our records show that you entered in 90, 91, 93, and 94, as he said, but that we don't have any record of your admission in 95. We conclude that you did not enter through inspection. And that's on page 220, 239, 240, a couple pages surrounding that. On the record, both in 1997 and 2011, the government concluded, after checking its records, that there was no admission after inspection and that it didn't happen. Now they're arguing that not only we were wrong before, it did happen, but there's clear and convincing evidence in the record that it happened, and there simply isn't, both because of the absence of any documentation in the system showing that it's exceedingly unlikely that he entered after inspection in 1995. Counsel, explain to me how, if you don't have the 1995 year date, that helps Mr. Edwards stay in the country. He was convicted in 1999 of a crime involving moral turpitude, right? Right. So that's the five years. So if we don't have the 1995 date, what does that mean for his likelihood of being able to stay in this country? Well, first, he became a lawful permanent resident in 1999, and he was admitted after inspection in 94, so there's no implication from 95 other than he doesn't fit within the five-year window that makes him removable. So he testified, when I went through customs with 200 other people, he said, I went through customs with 200 other people. They call out your name before you get on the bus and check your ID. And there's no possible way an immigration official would have his name to anticipate that. Forget about the part about calling names. What about went through customs? That was my question before. Going through customs is the same as waving someone through a port of entry in a car, I would think. And the cases have consistently held that that is enough for a procedurally regular admission. It's possible that I went through customs included all the multiple criteria, that you physically presented yourself, that the officer had a full and fair opportunity to inspect, that the officer tangibly communicated that he or she is determined, that you are not inadmissible. But I went through customs with 200 other people. So the government is suggesting that both that an H-2A visa necessarily includes inspection, so therefore you should assume inspection occurred, or that it's not only plausible, possible, but it's clear and convincing evidence that simply because he went through customs with 200 other people, that the government waved through 200 migrant farm workers, determining, you know what, even though the H-2A program theoretically requires inspection, 200 of you, we're just going to let you through. Their alternative argument involves that the person who checked I.D. as he got on the bus was a government official, which I take it is not a primary concern, but the simple act of I went through customs is not enough to show, at least clearly and convincingly, that all those criteria were met, as the government previously concluded. Let's talk about some of the other errors in this record, if you will indulge me. They say, I think it is the I.J. that says that he committed two petty larcenies, and isn't that just incorrect? Yes, that's simply flatly incorrect. So the first question is the removability, which we just covered. In the alternative, you don't even need to reach this if he's not removable, and there simply is no possible way there's clear and convincing evidence. But in the alternative, his application for lawful permanent resident based on his current wife, the agency errors, the most obvious one included the fact that the I.J. specifically concluded that he had committed and been convicted of two petty larcenies, when in fact he had neither committed nor been convicted of any. And that goes... How do you explain that he reached that conclusion? No explanation. I don't know. I think the government suggests that for one of them, that Mr. Edwards' testimony, he suggests, was confusing, but I don't find it so, and the criminal records were in there. And then for the second... The criminal records were there? Yes. And so it shows the charge, but not the conviction. And then for the second one, it was pending at the time of the hearing. The I.J. refused to continue it for 13 days, despite the government's consent. And the I.J. apparently considered the fact that it was pending to be equivalent to the fact that he committed it and had been convicted of it, even though he was actually convicted of a disorderly person's offense, not of petty larceny. And the I.J. held against Mr. Edwards the fact that he didn't pay taxes, although it's unclear that under the visa he was in as an agricultural worker, that he was required to pay taxes. Isn't that true, that he just held that against him as a balancing factor? Yes. There are a number of other errors. The most obvious one is the two petty larceny convictions non-existent. But, yes, the I.J. assumed tax law, which seems to be entirely unfounded. The I.J. and BIA both said he categorically denied any responsibility throughout his questioning. Also completely not true if they'd said we don't find sufficient acknowledgement of culpability. I might disagree, but that's a fact-finding that we'd be stuck with. But it's simply untrue that he categorically wholesale denied any responsibility. The tax problems, it said, it upheld the allegation that you first entered the country in 1995, even though you first entered in 1990, and one of the criteria is how long have you been in the country. So if you reach the alternative issue of the lawful permanent resident application, which you needn't do if you find that there's no possible way there's clear and convincing evidence of removability, but if you reach that second issue, then, yes, the multiple underlying errors absolutely preclude this Court from recognizing a proper exercise of discretion. And could you explain for me why you are seeking to readjust now, why you are seeking a new LPR finding based on the new, on the marriage, the second United States citizen wife, the first one died, I understand? Yes. Okay. So explain how that would help. If he's not removable, it makes no difference. If he is removable, then this second LPR application would, if granted... Plan B. Yes. It's an alternative Plan B, which I think is unnecessary, but out of an abundance of caution, we also raise that the multiple errors give this Court doubt about whether what the agency actually considered was proper. Its exercise on a proper record, not subject to question. The fact that it committed multiple errors that give reasonable doubt about the validity of its discretionary balancing preclude. And then the final piece is the timing issue. And we've briefed that. We think that under DEGI, the agency assessed good cause for a few slightly late documents without considering, without applying the correct legal standard, without considering the factors that this Court said it needed to consider, that whether there's colorable good cause, whether there's a possibility of substantial prejudice. And here, especially because if we're right about the agency's errors, then excluding these two documents would be the sole thing that would make, and assuming that he's removable, excluding these two documents, if it has any relevance, would preclude his remaining in the country where he's lived for 25 years with a citizen wife and three citizen children. And that just simply wasn't considered. Mr. Romberg, I've given you some extra time. I'm delighted to do that. But I want to ask you a final question. What is the decree? What do you want from us? What would you have this Court do? What this echoes the previous argument, what I think is clear is the agency did not apply the correct standard for removability. So at the very least, remand is required. What we would like is we think that this ---- Let's go step by step. So assume we agree with that argument. What is the result of that? What's the legal consequence of ---- Well, so then you couldn't uphold the removal order. What we would actually like is for you to look at this record and say, on this record there simply is no possible way to conclude that there is clear and convincing evidence that there was inspection in 1995. It's possible. It may be even arguably probable. I don't think so. But there certainly is not clear and convincing evidence, and therefore what we would like is you to conclude that, therefore he's not removable. In the alternative, the errors about the lawful permanent resident application, we don't think you need to reach that. So if he's not removable, what do we do then with this case in front of us? You enter an order stating that he's simply not removable. I don't know whether you technically need to remand the agency to dismiss or, you know, I don't know the technicalities, but in essence if you conclude there's no possibility of clear and convincing evidence of removability, you so note, and then he's not removable. It's pretty unusual for us to have such a detailed determination on the evidence in the record. Absolutely. This is a highly unusual case that fits into the rare situation where the issue was raised, went into in depth, and the only difference is that the agency didn't articulate a particular standard, but there's nothing further to be done than for this Court to review. It would be exactly the same. It's absolutely developed. I agree, Your Honor. Okay. Thank you very much. We have recession time. We'll hear from Mr. O'Malley. Go ahead, Mr. O'Malley. May it please the Court. My name is Andrew O'Malley. I represent the Attorney General of the United States. This Court should deny the petition for review because Mr. Edwards, or excuse me, the substantial evidence supports the agency's determination that Mr. Edwards was admitted to the United States in 1995. What is the evidence? Why don't you trace for us, since your opponent has made some very strong arguments based on the lack of evidence, why don't you trace for us the evidence that you think supports your position? Absolutely, Your Honor. Mr. Edwards has consistently maintained, since at least 1997, that he was admitted to the United States as an H-2A agricultural worker in 1995. He stated that to INS when they encountered him first in 1997. He signed an affidavit where he filled out. And what's the significance of that? Of? What conclusion do we draw from the fact that that was his position? Well, he's the one that's telling us that he came in in this manner, that he went through customs, that he had a visa to come into the United States, and he came in on that visa. What about the earlier times he entered as an agricultural worker? That's right. In terms of the fact that there's documentation of those entries and exits, there were his several other entries as an H-2A were documented, and INS did have records of that and had him leaving the country in 1994. When he was approached by INS in 1997, and this is in the record of deportable or admissible alien, the record from 1997, INS notes that he presented them with documentation saying that he had an H-2A visa when he came in in 1995 and that there was an I-94, which is the admission document number noted in there. Beyond that, he also indicates . . . Those facts are not disputed? No, Your Honor. And in fact, he . . . What's the inference to be drawn from those facts? Well, the inference is that he came in as an H-2A agricultural worker and was properly admitted in 1995. In fact, when he applied for adjustment of status in 1999, he noted on his application that he was admitted in 1995 as an H-2A. Now, that's significant. What is the significance of that? Where does that take us? Well, the significance is if he was not admitted in 1995, we have documentation of him exiting the country in 1994, so he would not have been admitted in a status. And you have to be admitted in status to adjust your status on that basis. That's under INA 245A. So that was adjudicated by INS. He adjusted his status to LPR as an alien who came in or was properly admitted as an H-2A agricultural worker. And now he's trying to have it the other way and say, no, no, no, you can't prove that I came in in 1995. Could you respond to your opponent's argument that the government has taken the position contrary to what it's taking now? In terms of that it's his burden? Well, yeah. He says that the government has taken the position that he did not . . . And that, in fact, he did not come lawfully in 1995. It is simply a . . . no, the evidence, the allegation is there that he came lawfully in 1995. That's what the allegation is. The position taken by the government attorney in the immigration hearing, she made an off-the-cuff comment that it's his burden to show manner of entry, and that was in relation to an argument that was raised at the time. She made it off-the-cuff. The immigration judge repeated it in his decision simply in laying out the arguments of the parties. What happened at the hearing? It was simply in the statement of facts. And he's right. The government attorney made that statement. It's not right. There's no evidence that the immigration judge . . . That's just one of many errors in this record. Isn't that true? I don't believe that's correct, Your Honor. What about the two alleged petty larcenies? The two alleged petty larcenies don't affect this decision whatsoever. This is the exercise of discretion. That's a matter that the Board reviews de novo. Why does it appear in the record if it doesn't matter? I can tell you. Well, it goes to the immigration judge's analysis of removability. Of what? Of removability. And it goes to an argument that Petitioner raised below that's not reiterated here with respect to the petty offense exception for the grounds of inadmissibility. And that's what the immigration judge is talking about there. That doesn't affect the discretionary determination. And I'll discuss whether or not the immigration judge was wrong there. But it doesn't affect the discretionary determination, which the Board reviews de novo. The Board did not rely on that part of the immigration judge's analysis and relied specifically on the immigration judge's criminal record as it was before the immigration judge and cites to the portion of the record that shows exactly what this individual was convicted of. Now, error in terms of the immigration judge's decision . . . It doesn't affect the Board's de novo review. The Board cited the proper evidence, listed the proper convictions, and doesn't say anything about this. What were the proper convictions? Well, he has a 1995 conviction, 1999 conviction for possession of a forged instrument. He was charged or arrested for petty larceny in 1999. It was rolled into the forged instrument conviction. No conviction, though. No conviction. That's correct. But when we see it in the record, you tell us no one relied on it. It makes me wary that it was in the mind of the decision-maker. The immigration judge noted that he had committed or was convicted of certain offenses, and he included in there both the 1999 petty offense and the 2015 petty offense, for which he hadn't been convicted of yet either. Correct. It's clear that the immigration judge knows that he was not convicted of that 2015 conviction. I think the immigration judge's decision with respect to listing out those offenses, he's listing convictions that he was committed and or was convicted of, because he's trying to determine whether or not he committed offenses as to whether or not the petty offense exception applied, not whether he was convicted of those offenses. It's not eloquently stated, but I think that's right. And again, that doesn't go to the discretionary weighing of factors on the Board's de novo review. It simply does not implicate that. The Board relied on the proper evidence, relied on the criminal evidence showing that that conviction was rolled, that arrest was rolled into the forged instrument offense. Right. So it was considered to the extent that it was rolled in. Correct. Well, it was considered in the sense that that realm of activity was a conviction for possession of a forged instrument. We're talking about someone who was in this country for 25 years, right? And so this accretion of errors doesn't speak well for the government's handling of this case. Well, I think that the petitioner's counsel or petitioner has done a really good job of creating error here. I don't think those errors are present. I don't think the petitioner created the error. I think he's pointing to errors in the record. To the extent that that was an error on the part of the immigration judge, and I don't think it was, I think he was just listing the offenses. And you have in the record, he's listing out the testimony. Why was he doing that? Why was he listing these? Simply to show that the petty offense exception does not apply to this individual's 1995 forgery. How does it do that? Well, because he has multiple convictions, or he's committed multiple crimes. So he's laying out what the criminal history is. Whether or not he stated he was charged with or convicted, it doesn't matter. It doesn't affect the other analysis. And, in fact, the petty offense exception has no bearing on this case anymore whatsoever. That was simply to reject an argument that petitioner let go because it was simply wrong. Can you tell me why the IJ refused to accept the sealed medical records when all applicants are told to wait as long as possible since the medical records have a date of expiration? Sure. And is that reasonable with a 25-year resident of this country to not take them? Because I think they were how many days late? 13 days late or maybe less? I'm sorry. I'm out of time. May I? Of course. I think you need to look at it in the whole context. It wasn't just the medical documentation. And I don't think that's the important document that was excluded. The important document was the affidavit from the co-sponsor. And it wasn't just 14 days late. Now, Petitioner's counsel asked for six months to produce all evidence and was given the date of October of 2014, I believe. She didn't submit it then. She didn't submit it by the immigration court's deadline of 15 days in advance. She didn't submit it at the beginning of the hearing with the documents that she said were rejected because of the improper A number. It wasn't until cross-examination when the government's attorney said, this is confusing. We don't understand the relationship here with the co-sponsor because he's claiming this person as a dependent on his taxes. We need to see the financials. We need to understand the situation here that finally Petitioner's counsel tried to adduce this document. Not at the beginning of the hearing. Not until it was raised by Petitioner's counsel. But it was responsive to the questions raised.  It was, Your Honor. It wasn't accepted. Is that correct? It wasn't accepted? It was not accepted. We had a whole history of Petitioner's counsel missing deadlines. Why wasn't it simply accepted at that point? It's been raised on cross-examination or whatever? I think the immigration judge has wide latitude as to accepting or rejecting documentation. Petitioner's counsel had missed all these deadlines, had not filed these documents. We're talking about a complicated application. What's the theory here, that it was a surprise to government counsel? I don't know if it was a surprise. Well, yes. I mean, presumably the question of admissibility is determined on some sort of balancing test. Well, it was a prejudice to government counsel not having this document beforehand to analyze what the problems are with respect to this co-sponsor of this application. And not having all the documents for the application for adjustment of status beforehand to properly go into the issues at the hearing. And, again, the immigration judge has wide latitude. There's broad discretion in setting this. Modegi, which opposing counsel cited, which stands for the proposition that if there was a likelihood of substantial prejudice from the enforcement of the deadline, and when the attorney demonstrated good cause in the form of the need for a timely exam, that the mistake, that it's an abuse of discretion. And there's no good cause here, Your Honor. The only cause she provided was she was waiting for 2014 tax returns, which we're talking about August of 2015 here, and that she was waiting for a signature on this affidavit of support. There's no indication of why she couldn't have produced this beforehand and given government counsel the opportunity to do that. I don't think you need to get into the issue of denial on the merits. I think certainly that the agency acted within its discretion in rejecting those documents. I think the matter of discretion is, again, on the Board's de novo review, reviewed the proper criminal history, the immigration judge's decision or statements with respect to criminal history, in terms of removability, have no bearing on the Board's de novo decision as a matter of discretion. Can I ask one question about going back to removability? Yes, Your Honor. Could you respond to Mr. Romberg's argument about the nature of the evidence? First of all, there's the clear and convincing evidence standard, which was not arguably clearly stated by the IJ or the BIA, but why is his testimony, having no documents in the government's files, why is his testimony that he went through customs, responded, and got on a bus with 200 people, why is that enough to constitute clear and unequivocal and convincing evidence of his procedurally proper admission? I think because he simply tells us that he went through customs. He tells us that when I got to the bus, I had to show documentation saying that I was eligible to travel. Because the petitioner said it. That's right. And the Board has said that the petitioner's testimony is sufficient to establish a procedurally regular admission, to establish admission into the United States. What is the physical, to go on with Judge Etkin's question, this was a migrant workers group, right, getting off the plane. They all came off the plane at the same time, is that right? That's my understanding. Because they all got on the bus, that would be my understanding, yes. And then went through customs and had documents checked showing that they were eligible to travel. Presumably, who's there? Somebody from the Department of Agriculture? No, it would be an INS official checking. But who's handling the bus? Who's driving the bus? Well, the employers are able to drive the bus, I believe. I've never seen anything suggesting that there's delegation of authority to employers to check travel documents. Whoever runs this program, presumably, is there? Is that it? Are they there to check on these people who are coming in? Whoever runs the program. Well, the program is split between the Department of Labor and the Department of Justice now. And in terms of INS at that point. So Labor runs the migrant labor programs? They run the certification for whether or not farmers are able to have migrant workers come in. And then the visas are processed through the Department of Justice now. Presumably, 200 people suddenly arrive and they're moved on the basis of some representation by whoever is in charge of the group, right? Yes. But that doesn't get us anywhere in terms of Petitioner's claim that he had to present travel authorization before he got on the bus. And what is there in the record that suggests that he did? His testimony. That's exactly what he said he did. If I could take one second to address. No, no. More than one second. Feel free. I gave Mr. Romberg extra time. I'd like to address his statements with respect to whether or not this case needs to be remanded. The cases he relies on are simply cases where this court has determined that if it goes back to the board, they'll reach the same decision. Otherwise, the ordinary remand rule applies. It would be a Ventura issue. This case needs to go back to the board for further proceedings. If the court finds error, you can't just make the decision on your own. Why not? Well, because the ordinary remand rule applies. It's a Ventura issue. The board has further proceedings to engage in. Well, he suggested this is not the ordinary case. In terms of, well, I don't think there's anything out of the ordinary here. The agency applied the proper standard, the clear and convincing evidence standard. They held DHS to their burden. There's nothing to the suggestion that they shifted the burden to Petitioner. That burden of proof is applied all the time in immigration proceedings. The immigration court and the board, this is what they do. It's in the boilerplate documents in the record. Everybody knows that it's the clear and convincing evidence standard. And they specifically held throughout that the DHS met its burden of proof. Is there anything else that Mr. Romberg said that you feel requires an answer? Your Honor, just simply that there was a determination in 2011 that he wasn't admitted. The 2011 I-213 in the record simply restates what happened in 1997. It's not considered another finding of that. There was no finding by the government? No. It's simply restating what happened. They didn't find documents or they didn't find him in the system, so they processed him as an individual who came in without admission at that time. Thanks very much. Thank you very much, Your Honor. Mr. Romberg, we reserve time. Two very quick points. First, the only possible basis to uphold a theoretical finding of clear and convincing evidence, which, again, is it possible that the agency put the burden on the government? Yes. Is there any reason to believe they applied a clear and convincing evidence standard? No. And then the only question is, is the person who called out Mr. Edward's name and checked his ID in order to let him on the bus, is there clear and convincing evidence that that person was an immigration officer? And I think the answer is obviously not. No immigration officer would know his name to call out. No immigration officer is going to be the one who says, before you get on the bus that goes to our tobacco farm, we want to make sure that you are one of our workers. Whose burden is it to produce this date of entry by clear and convincing evidence? The government's burden by clear and convincing evidence. Is it possible? Yes. Is there clear and convincing evidence on this record? Not possible. And then on the remand point, Uselo-Gomez, 464 F. 3rd at 170, explains that this is not a Ventura situation, this is not a typical case. If a reviewing court can state with assured confidence that a particular conclusion that would or would not under any reasonable scenario qualify, then there's no need to remand. It's one of the unusual cases. What do we do if we don't remand? Just what do we do? You conclude that on this record there's simply not possible proof of clear and convincing evidence. And as I said, I don't know whether you simply then dismiss or remand to the agency for further consistent proceedings. But the question of whether you have to say they didn't apply the right standard, send it back, do it over, or is this one of those unusual cases, as Uselo-Gomez points out, and we believe that absolutely that it is. Thanks very much, Mr. Unglert. Thank you. We'll reserve decision.